# UNITED STATES DISTRICT COURT

## for the

### Southern District of New York

---

| | | |
|---|---|---|
| CF2 CO., LTD. | ) | |
| | ) | ECF CASE |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 1:19-cv-07774 |
| v. | ) | |
| | ) | |
| YOCO INC., and M.A.X. SPORTS ENTERPRISE INC, | ) ) | |
| | ) | |
| | ) | |
| | ) | *Document Filed Electronically* |
| Defendants. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**RHA KIM GROSSMAN & MCILWAIN, LLP**

266 W 37th St. Suite 1600

New York, NY 10018

(718) 321-9797

Attorneys for Defendants

On the Brief:
    Andrew D. Grossman, Esq.

## **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES………………………………………………….. | 3 |
| PRELIMINARY STATEMENT……………………………………………… | 4 |
| PROCEDURAL BACKGROUND …………………………………………… | 4 |
| LEGAL STANDARD ……………………………………………………... | 6 |
| ANALYSIS …………………………………………………………………… | 9 |
| POINT 1: Plaintiff has not alleged domination and control of the corporate defendants sufficient to sustain corporate veil-piercing under New York law ……………………………………………… | 9 |
| POINT 2: Plaintiff has not alleged any wrongs beyond the contract, and thus cannot maintain an action sounding in fraud under New York law. | 12 |
| CONCLUSION ……………………………………………………………… | 15 |

# **TABLE OF AUTHORITIES**

**CASES**                                                               **Page**

*Alfred P. Sloan Foundation, Inc. v. Atlas,* 42 Misc.2d 603 (Sup. 1964) ………….    12

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.,* 122 F.3d 130, 134 (2d Cir. 1997) ..    7, 9

*Bartle v. Home Owners Co-op.,* 309 N.Y. 103 (1055) …………………………….    12

*Berger v. Roosevelt Inv. Group Inc.,* 28 A.D.3d 345 (1st Dept. 2006) …………….    8, 13

*Carle Place Union Free School Dist. V. Bat-Jac Const., Inc.,* 28 A.D.3d 596, 813 (2nd Dept. 2006) ……………………………………………………………………    8

*City of Providence v. BATS Glob. Mkts., Inc.,* 878 F.3d 36, 48 (2d Cir. 2017) ……    6

*Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir. 1979) ……………………………...    12

*In re Stage Presence Inc.,* 592 B.R. 292, 302-303 (Bankr, S.D.N.Y. 2018) ………    8, 10, 12

*Javier v. Beck,* No. 13 Civ. 2926 (WHP), 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014)……………………………………………………………………...    6, 7

*Lynch v. City of New York,* 952 F.3d 67, 75 (2d Cir. 2020) ………………………..    6, 10

*Major League Baseball Properties, Inc. v. Opening Day Productions, Inc.* 385 F.Supp.2d 256 (S.D.N.Y. 2003) …………………………………………………..    8

*Solutia Inc. v. FMC Corp.,* 385 F.Supp.2d 324 (S.D.N.Y. 2005) …………………    8

*TNS Holdings, Inc. v. MKI Sec. Corp.,* 92 N.Y.2d 335, 339 (N.Y. 1998) …………    7

*VFS Financing, Inc. v. Falcon Fifty LLC,* 17 F.Supp.3d 372, 381 (S.D.N.Y 2014)..    6

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir. 1991) ………………………………………………………………..    8

**STATUTES**                                                      **Page**

Fed. R. Civ. Pro. 12(b)(6) ………………………………………………………….    5, 6

## PRELIMINARY STATEMENT

This case arises from a commercial dispute between Plaintiff and Defendants Yoco Inc. and M.A.X. Sports Enterprise Inc.  The originally-filed complaint contained causes of action all related to the commercial transactions, seeking as damages the allegedly unpaid invoices.

The Second Amended Complaint seeks to add the president of the corporate defendants, Mr. Park, in his individual capacity, on a theory of corporate veil-piercing, and to add a cause of action sounding in fraud.  The first of these theories is supported entirely by an allegation that an employee of defendants made a reference to Mr. Park's gambling; there is no allegation that Mr. Park used corporate funds for gambling, or in any way exercised the domination required under New York law for alter ego liability.

The latter theory posits that by offering a business partnership to the president of the plaintiff, defendants induced them to continue their business relationship; alternatively, the plaintiff claims that defendants' issuance of a notice of claim less than three months prior to the commencement of this action is sufficient to convert the liability to fraud, even though the underlying transactions were all complete at the time of that alleged misrepresentation.

As the plaintiff has not met its pleading burden under New York law for either corporate veil-piercing, or for fraud, defendants now move to dismiss those portions of the Second Amended Complaint.

## PROCEDURAL BACKGROUND

The instant case was commenced by the filing of a complaint by the Plaintiff on August 20, 2019.  On October 1, 2019, Plaintiff filed its First Amended Complaint, and an answer was filed by the Defendants on November 21, 2019.


On August 28, 2019, the Court approved the parties' proposed scheduling order. That order prohibited adding additional parties after April 24, 2020. On May 13, 2020, the Court entered an order which, inter alia, stated that "[a]mended pleadings may not be filed and additional parties may not be joined except with leave of the Court. Any motion to amend or to join additional parties shall be filed within 40 days from the date of this Order." (ECF Docket 19, 3). Forty days from that date was June 22, 2020.

On July 23, 2020, the Court approved a request by the Plaintiff to, inter alia, extend all deadlines in the May 13, 2020 scheduling order by two months. For the time to add additional parties, that means the deadline was extended to August 22, 2020.

On August 24, 2020, two days after the deadline passed, Plaintiff brought a motion for leave to amend the complaint to (1) add Hun C. Park as an additional defendant on a theory of corporate veil-piercing, and (2) add a cause of action sounding in fraud. On September 8, 2020, Defendants filed opposition to the motion (ECF Docket 26) based on futility, as the amended complaint would be subject to a motion to dismiss under FRCP 12(b)(6). Plaintiff replied on September 15, 2020 (ECF Docket 29).

After the motion was submitted, but prior to the Court rendering a decision, the parties met and conferred to discuss the looming discovery deadlines. Since the amended complaint would, if allowed, drastically expand the scope of the relevant facts, the parties agreed to jointly request a new scheduling order, tying the remaining dates to a decision on the then-pending motion. That request was filed on October 6, 2020 (ECF Docket 31).

The following day, October 7, 2020, the Court granted the joint request. However, the order granting the request made no reference to the pending motion, instead ordering Plaintiff to file its amended complaint- for which it had not yet received leave- by October 13, 2020.

Defendants filed a letter requesting clarification, as there had been no decision rendered on the fully-briefed and disputed motion for leave to amend (ECF Docket 33).  The Court did not directly respond to the letter request, but instead terminated the pending motion, stating that it was granted in the October 7, 2020 order.  That order contained no reference to the motion (ECF Docket 35).

Consistent with the Court's order, Plaintiff filed its Amended Complaint on October 13, 2020 (ECF Docket 36).  On October 26, 2020, Defendants filed a pre-motion letter pursuant to 4(A)(i) of the Court's Individual Rules (ECF Docket 45).  On October 28, 2020, the Court issued an order directing the Defendants to file their motion by November 13, 2020.  This motion follows.

## LEGAL STANDARD

Under Fed. R. Civ. Pro. 12(b)(6), a complaint may be dismissed in whole or in part for failure to state a claim upon which relief can be granted.  In analyzing a motion brought under Rule 12(b)(6), the Court "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of plaintiff." City of Providence v. BATS Glob. Mkts., Inc., 878 F.3d 36, 48 (2d Cir. 2017).  In conducting such an inquiry, "allegations that are conclusory are not entitled to be assumed true." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020).

Corporate veil-piercing of New York corporations is analyzed under New York law.  See VFS Financing, Inc. v. Falcon Fifty LLC, 17 F.Supp.3d 372, 381 (S.D.N.Y. 2014) ("New York's choice of law rules provide the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.") (internal quotations omitted).  "New York law permits a plaintiff to pierce the corporate veil and sue a non-signatory for breach of contract when the non-party is an alter ego of one or more signatories." Javier v.

6

Beck, No. 13 Civ. 2926 (WHP), 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014) (internal quotations omitted).

However, the New York Court of Appeals has made it clear that "[t]hose seeking to pierce a corporate veil…bear a heavy burden." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (N.Y. 1998). "New York law requires the party seeking to pierce the corporate veil to make a two-part showing: (i) that the owner exercised complete dominion over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997).

The Second Circuit has articulated a series of factors that a court may consider in determining whether the alleged alter ego exercised complete domination over the corporation at issue:

> (1) The absence of formalities that are part of the corporate existence (for example, the issuance of stock, election of directors, and keeping of corporate records); (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlaps in ownership, officers, directors and personnel; (5) common office space, address and telephone numbers; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporation dealt with its owner or other related corporations at arm's length; (8) whether the corporation was treated as an independent profit center; (9) the payment or guarantee of debts by the dominated corporation in favor of its owner or other related corporations; and (10) whether the corporation in question had property that was used by the owner just as though it belonged to the owner.

In re Stage Presence, Inc., 592 B.R. 292, 302-303 (Bankr. S.D.N.Y. 2018) [citing Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991)]. "While complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward the party seeking piercing is required." Am. Fuel Corp., 122 F.3d at 134.

In order to successfully plead fraud under New York law, Plaintiff must allege (1) misrepresentation or material omission of a fact which was false and known to be false by the defendant; (2) made for the purpose of inducing reliance; (3) justifiable reliance on the misrepresentation or material omission by the other party; and (4) injury. Major League Baseball Properties, Inc. v. Opening Day Productions, Inc., 385 F.Supp.2d 256 (S.D.N.Y. 2003).

A cause of action to recover damages for fraud does not lie where the only fraud charged is related to a breach of contract. Carle Place Union Free School Dist. v. Bat-Jac Const., Inc., 28 A.D.3d 596, 813 (2nd Dept. 2006). Generally, a separate cause of action in New York seeking damages in fraud cannot stand when the only fraud relates to a breach of contract, unless plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract, (2) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeks separate damages that are caused by the misrepresentation and are unrecoverable as contract damages. Solutia Inc. v. FMC Corp., 385 F.Supp.2d 324 (S.D.N.Y. 2005). A cause of action for fraud does not arise where the only fraud alleged merely relates to an alleged intent to breach its contractual obligations. Berger v. Roosevelt Inv. Group Inc., 28 A.D.3d 345 (1st Dept. 2006).

## ANALYSIS

I. <u>Plaintiff has not alleged domination and control of the corporate defendants sufficient to sustain corporate veil-piercing under New York law.</u>

Piercing the corporate veil requires a two-part showing by the Plaintiff: that the subject exercised complete domination of the corporate entities at issue, and that domination was used to perpetrate a fraud or wrong against the Plaintiff. <u>Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.</u>, 122 F.3d 130, 134 (2d Cir. 1997).

At the outset, it should be noted that the Plaintiff's original complaint alleges, and Defendants do not seriously dispute, that the two corporate entities, Yoco Inc. and M.A.X. Sports Enterprises, Inc., are alter egos of each other; indeed, they were used interchangeably in the business relationship between Plaintiff and Defendants. Despite this, many of the new allegations in the Second Amended Complaint appear aimed at establishing corporate veil piercing between these entities, rather than alleging corporate veil piercing between Hun Park and those entities.

For example, the bulk of their veil-piercing allegations, contained within paragraph 12 of the Second Amended Complaint, read as follows:

> *Park exercised complete domination and control of Defendants. YOCO and M.A.X. share offices together and issue purchase orders interchangeably. Sometimes YOCO orders garments goods and some other times M.A.X. ordered garment goods Employees of YOCO and M.A.X. know Park to be the President of each corporation and these two corporate entities are one and the same and the alter ego of the others. There were about 5-8 employees working for both YOCO and M.A.X. Most importantly, Park had sole and absolute discretion on the issuance of all purchase orders and checks in connection with the operations of YOCO and M.A.X. (sic throughout).*

9

The first sentence of that paragraph is the type of conclusory allegation that should be disregarded and given no weight. Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). The remaining allegations, if true, would support corporate veil-piercing between the two corporate entities, but not against its president; the sole and absolute authority on the issuance of purchase orders and checks is not "domination" of a corporation; indeed, it is a power common to most presidents of small companies.

Turning to the factors outlined in In re Stage Presence, Inc., 592 B.R. 292 at 302-303, it becomes plain that the plaintiff has not met its pleading burden.

(1) The absence of formalities that are part of the corporate existence: the plaintiff made no allegations that corporate formalities are not observed by the corporate defendants.

(2) Inadequate capitalization: plaintiff alleges that it was told by an employee of the corporate defendants that the corporate defendants "did not have money to pay [plaintiff] because of Park's gambling habit.

(3) Whether funds are put in and taken out of the corporation for personal rather than corporate purposes: no allegations are made regarding the use of corporate funds.

(4) Overlaps in ownership, officers, directors, and personnel: this factor is only discussed vis-à-vis the relationship between the corporate defendants, and is not a consideration here.

(5) Common office space, address and telephone number: there is no allegation that Mr. Park shares office space, and address, or telephone number with the corporate defendants.

(6) The amount of business discretion displayed by the allegedly dominated corporation: there are no allegations addressing this factor in the Second Amended Complaint;

(7) Whether the related corporation dealt with its owner or other related corporations at arm's length: as the instant veil-piercing is between the individual and the corporations, this is not a factor relevant to the instant analysis.

(8) Whether the corporation was treated as an independent profit center: no allegations are made regarding this factor.

(9) The payment or guarantee of debts by the dominated corporation in favor of its owner or other related corporations: no allegations are made regarding this factor.

(10) Whether the corporation in question had property that was used by the owner just as though it belonged to the owner: aside from the implicit allegation that Mr. Park's gambling led to the company's financial difficulties, this factor is not addressed in the Second Amended Complaint.

Though none of the factors are addressed directly by the plaintiff, reading the allegations in the complaint in the light most favorable to the non-movants supports an implicit allegation that Mr. Park's gambling habit affected the corporations' ability to pay back its creditors. However, the pled allegations do not include any assertion that the corporate defendants were undercapitalized, or that any alleged gambling money came from the corporations. Plaintiff attempts to insinuate, rather than allege, a plausible narrative supporting individual liability.

"New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded,

that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979).

Plaintiff's insinuations cannot reasonably be read as alleging alter ego domination under New York law.  At best, it contains insinuation of the misuse of funds, but fails to allege that any corporate funds were actually taken by Mr. Park, or that the corporate defendants engaged in Mr. Park's business rather than their own.

Among the several states, New York requires perhaps the most difficult burden on a plaintiff seeking to pierce the corporate veil.  See Bartle v. Home Owners Co-op., 309 N.Y. 103 (1055); Alfred P. Sloan Foundation, Inc. v. Atlas, 42 Misc.2d 603 (Sup. 1964).  Plaintiff here has not directly alleged any of the In re Stage Presence factors cited above, and its insinuated allegations do not rise to level of alleging veil piercing sufficient under New York law.


II. Plaintiff has not alleged any wrongs beyond the contract, and thus cannot maintain an action sounding in fraud under New York law.

The dispute at issue in this case arises from a series of business contracts between the plaintiff and the corporate defendants.  Construing the proposed amended complaint in the light most favorable to the plaintiff, two possible theories of fraud emerge:

1. Defendants discussed a business opportunity with plaintiff in an attempt to gain the plaintiff's trust with regards to outstanding invoices, and then made further purchase orders with no intention of paying for them (par. 18-19); and

2. In 2019, after the liability had arisen, defendants filed a false "claim note" to obscure and delay their contractual liability (par. 37-39).

Notably, in each of these theories, the damages relied upon are identical to the damages sought in the breach of contract cause of action. No allegations of a separate legal duty appear in the Second Amended Complaint.

The first theory fails for multiple reasons. It is well-settled in New York that fraud is not viable on the allegation that a party to a contract entered that contract without an intention to perform. See Berger v. Roosevelt Inv. Group, Inc., 28 A.D.3d 345 (1st Dept. 2006). Moreover, there is no allegation that any misrepresentation took place, only that Park approached the plaintiff's president with a business partnership offer that the plaintiff politely declined.

Plaintiff's theory also requires a finding of reasonable reliance. Assuming the allegations are true, plaintiff was offered a partnership, declined it, and based on the offer itself, the plaintiff continued conducting business with the corporate defendants for three years. During that three years, the business debt continued growing, but plaintiff disregarded the growing debt, based on the previous offer of a partnership.

Such reliance cannot be found to be reasonable. Consequently, this first theory of fraud lacks its two key elements: a misrepresentation, and reasonable reliance. What then of damages?

The only damages alleged with regards to the proffered fraud theory are identical to the damages sought for breach of contract. Plaintiff alleges that defendants made new orders without an intention to pay for them (Exhibit A, par. 74), which is precisely the theory of fraud proscribed by New York courts in Berger and related cases. Allegations that a party did not intend to perform its contractual obligations at the time they were made is categorically insufficient to support a fraud cause of action in New York.

The second theory- that the corporate defendants filed a false notice of claim- is disposed of more simply. At the time the alleged misrepresentations were made, the debt had already

been incurred.  Plaintiffs do not claim- nor can they- that they relied in any way on that alleged misrepresentation, only that it was offered to "muddy up the water and to drag this matter on," (sic) (par. 39), or to "attempt to justify their nonpayment." (par. 83).

If the plaintiff's factual allegations are presumed true, the defendants' attempts were not successful; we are, after all, litigating the transactions at issue.  If, as plaintiff claims, defendants raised a false defense to the liability, what then were the damages?

The alleged misrepresentation occurred in May 2019 (Ex. A, par 37).  The alleged liability had already fully arisen by that time; the instant case was filed less than three months later.  No new liability is alleged to have arisen in the interim.  There is no allegation that plaintiff relied on this alleged misrepresentation- plainly, they did not- and no explanation of how they were additionally harmed as a result of any such reliance.  To the extent it could be inferred that they waited less than three months to pursue their claims in this Court because of the alleged misrepresentation, such additional harms are compensated through prejudgment interest, which is being sought in the Second Amended Complaint.

In any case, plaintiff's attempt to plead fraud liability would require a massive expansion of such liability for all business litigants; the plaintiff is asking this Court to find that raising a false defense to an existing contractual liability converts that liability to one based on fraud.  To be clear, there will be a factual dispute regarding the notice of claim- defendants maintain that a majority of the claims made in this action are unfounded and were based on defective goods- but the Court need not review the competing factual allegations to find that, as a matter of law, raising a defense to liability does not convert such liability into fraud.

## **CONCLUSION**

For the foregoing reasons, the plaintiff's Second Amended Complaint should be dismissed as to Hun C. Park, and the ninth cause of action for fraud should be dismissed.